IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BENJAMIN LEE SANTIAGO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MARIROSA LAMAS, *et al.* | : | NO. 13-CV-5070 |

**REPORT AND RECOMMENDATION**

CAROL SANDRA MOORE WELLS                                         November 19, 2014
CHIEF UNITED STATES MAGISTRATE JUDGE

Presently before this court is a Petition for a Writ of Habeas Corpus filed by Benjamin Lee Santiago ("Petitioner"), *pro se*, pursuant to 28 U.S.C. § 2254. Petitioner is a state prisoner serving an aggregate sentence of 20 to 40 years at the State Correctional Institution Rockview. He seeks habeas relief based on claims that counsel rendered ineffective assistance and a *Brady/Giglio* violation. The Honorable Stewart Dalzell referred this matter to the undersigned for preparation of a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). For reasons set forth below, it is recommended that the habeas petition be DISMISSED with prejudice, because Petitioner's claims are procedurally defaulted.

**I. BACKGROUND AND PROCEDURAL HISTORY[1]**

The Court of Common Pleas of Lancaster County, Pennsylvania summarized the facts leading to Petitioner's arrest and conviction as follows:

> On June 21, 2006, at approximately 10:00 p.m., police were dispatched to 143 Old Dorwart Street in Lancaster City where David and Amy Blodgett and family and friends had been celebrating David and Amy's wedding as well as Amy's birthday. Upon arrival, police found that both David and Amy Blodgett had suffered gunshot

---

[1]The facts set forth herein were gleaned from Petitioner's Habeas Corpus Petition ("Pet."), the Commonwealth's Answer to Petition for Writ of Habeas Corpus ("Resp."), inclusive of all exhibits thereto, and the state court record.

1

> wounds. Four individuals were eventually arrested for the incident. Three of them, [Petitioner], Carlos Delgado, and Edward Smith were tried together in a trial held April 11 through April 17, 2007. The fourth man, David Smith, testified against his three co-defendants at the trial.
>
> During the trial, there was much debate and conflicting testimony as to who possessed a weapon, who actually shot a gun and how many shots were fired. Amy believed that there were three or more shots fired; however, she also stated that she never actually saw a gun. David Smith, the co-defendant who was not on trial, testified that both [Petitioner] and Carlos Delgado pulled out guns after arriving at the home. David Smith also testified that [Petitioner] fired the first of the four or five shots.
>
> After the shooting, [Petitioner] gave the gun to his friend Brandon Norwood. Then, [Petitioner] and his girlfriend, Michelle Heaps, fled. They were apprehended in Richmond, Virginia on their way to Georgia. Detective Nathan Nickel of the Lancaster City Bureau of Police traveled to Richmond to interview [Petitioner] and later obtained a statement. At that point, [Petitioner] acknowledged that he was the shooter.
>
> Michelle Heaps testified at trial that, on the evening of the shooting, [Petitioner] left her home with a gun after talking on the phone with co-defendant, David Smith. About five or ten minutes later, Heaps heard gunshots. After she heard the shots, [Petitioner] called her and told her that he thought he shot two people.
>
> The testimony showed that the defendants' actual target was Michael Santiago, Amy Blodgett's brother-in-law. Amy Blodgett testified that at one point during the evening, she saw her sister arguing with the defendants on the front porch of her house. Michael then came to the door and one of the defendants said, "I just want my $185." Then, Amy testified that they started shooting.
>
> Amy suffered multiple injuries as a result of the gunshot, including loss of her left kidney, spleen and half of her pancreas. David stayed in the hospital for almost two weeks following the shooting and suffered from complications thereafter, due to the doctor's inability to remove the bullet from his body.

*Commonwealth v. Santiago*, No. 4013 CR 2006, slip op. at 1-3 (Ct. Com. Pl. Lancaster County. Sept. 28, 2007); Commonwealth Exhibit ("Com. Ex.") L. A jury convicted Petitioner of two counts of aggravated assault, criminal conspiracy to commit aggravated assault, firearms not to be carried without a license and three counts of recklessly endangering another person ("REAP"). *Id.* at 5.

2

Petitioner was sentenced to an aggregate term of twenty to forty years of incarceration plus a fine, costs and restitution. Com. Ex. D at 27-29.

On June 22, 2007, Petitioner filed a post-sentence motion to modify and reduce his sentence. Com. Ex. E at [1]-[2]. The trial court denied the motion on July 3, 2007. Com. Ex. F at [1]. On July 24, 2007, Petitioner filed an appeal to the Pennsylvania Superior Court, at which point his counsel withdrew. Com. Ex. G at [1]; Com. Ex. H at [1]-[2]. New counsel was retained and filed a Concise Statement of Matters Raised on Appeal to the Superior Court on August 14, 2007.[2] Com. Ex. I at 1-2. On April 30, 2008, the Superior Court affirmed the judgment.[3] Com. Ex. M at 7. Petitioner did not seek *allocatur*. Resp. at 3.

On April 16, 2009, Petitioner, via counsel, sought relief under the state Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. §§ 9541-46.[4] Com. Ex. N at 1-3. The PCRA Court

---

[2] Petitioner raised the following issues in his Pa.R.A.P. 1925(b) statement:
 1. The trial court erred in failing to issue an adequate jury instruction regarding hearsay contained in Commonwealth Exhibits 21-27, inclusive. The recorded conversations included admissible hearsay of party defendants but also inadmissible hearsay of non-party declarants. The court indicated at N.T., Trial, p. 1351, in denying the mistrial motions of Attorneys Lanza and Marinaro that it would issue a curative instruction on the point. The court gave a brief instruction as to these telephone calls at N.T., Trial p. 1363, regarding "consciousness of guilt." No curative instruction regarding hearsay was given.
 2. The court's sentence of [Petitioner] was excessive, unlawful and contrary to the norms of the sentencing process. The court failed to adequately consider the sentencing guidelines and did not provide adequate reasons for its deviations from the standard range of the sentencing guidelines.

Com. Ex. M at 2-3. The court notes that Petitioner ultimately abandoned issue two and presented an amended version of issue one in his appellate brief which states: "Whether the trial court committed reversible error in issuing an inadequate or inaccurate jury instruction on consciousness of guilt as it related to the intercepted prison telephone calls?" Com. Ex. K at 4.

[3] During direct appellate review, the Superior Court deemed that Petitioner waived amended issue one, because he had not properly preserved it by raising it in his Pa.R.A.P. 1925(b) statement, nor did he object to the jury instruction regarding "consciousness of guilt" during his trial. *See* Com. Ex. M at 4-7.

[4] Petitioner raised the following claims in his PCRA petition:
 1. Trial counsel was ineffective in failing to communicate plea offers from the Commonwealth to his client;
 2. Trial counsel was ineffective in failing to object to the Assistant District Attorney's injection of personal belief into his closing argument; and
 3. Trial counsel was ineffective in failing to cross-examine adequately the witnesses David Smith and Michelle Heaps.

Com. Ex. N at 1-2.

conducted evidentiary hearings and ordered post-hearing briefs, which Petitioner's counsel declined to file. Com. Ex. P at [1]. Accordingly, on August 24, 2009, the PCRA Court dismissed the PCRA petition. Com. Ex. Q at [1]. On October 16, 2009, Petitioner filed, *pro se,* a *nunc pro tunc* notice of appeal to the Pennsylvania Superior Court. Com. Ex. R at [1]-[2]. The PCRA Court, issued an opinion, on December 28, 2009, explaining its August 24, 2009 dismissal. Com. Ex. S at [1]-[3]. On October 8, 2010, the Superior Court remanded the case to the PCRA Court with instructions to appoint new counsel and determine when Petitioner received notice of the dismissal of his PCRA petition. Com. Ex. T at 6. Next, on December 13, 2010, following a hearing, the PCRA Court found Petitioner's *pro se* appeal timely, because he filed it within thirty days of receiving notice of the PCRA dismissal from his attorney; the PCRA Court appointed new counsel and ordered counsel to file a separate appeal. Com. Ex. U at [1]. Petitioner filed an appeal on December 22, 2010.[5] Com. Ex. Y at app. E. The Superior Court affirmed the PCRA dismissal on September 27, 2011. Com. Ex. Y at app. A. Allowance of appeal was denied by the Pennsylvania Supreme Court on November 30, 2012. Com. Ex. Z at [1].

---

[5]Petitioner presented the following claims in his PCRA appeal:
1. The lower court erred in denying Appellant's PCRA petition where trial counsel was ineffective for failing to adequately cross-examine two of the Commonwealth's key witnesses. Specifically, trial counsel was ineffective for failing to ask Michelle Heaps specific questions about the gun she saw in Appellant's possession and was also ineffective for failing to question David Smith about his inconsistent statements made during the investigation and any plea offer the Commonwealth offered/made him.
2. The lower court erred in denying Appellant's PCRA petition where trial counsel was ineffective for failing to adequately argue the inconsistencies in the Commonwealth's presentation of the evidence. Given that the defense theory was that Appellant was not present at the time the offense was committed, highlighting the inconsistent theories presented by the Commonwealth would have bolstered the defense strategy. Trial counsel's failure to do so prejudiced Appellant.

Com. Ex. V at 1-2.

4

Petitioner filed the instant habeas petition, on December 5, 2012,[6] asserting that: (a) trial counsel was ineffective for failing to request an instruction on the voluntariness of his statement and (b) there was a *Brady/Giglio* violation in regards to Commonwealth witness David Smith ("Smith") who negotiated a plea deal with the Commonwealth in exchange for his testimony against Petitioner, despite his testimony to the contrary. Pet. at 9. The Commonwealth contends that Petitioner's claims are unexhausted and procedurally defaulted. Resp. at 7. This court agrees.

## II. DISCUSSION

### A. Exhaustion and Procedural Default

#### 1. Basic Principles

A habeas petitioner must exhaust state court remedies before obtaining habeas relief. 28 U.S.C. § 2254(b)(1)(A). The traditional way to exhaust state court remedies in Pennsylvania was to fairly present a claim to the trial court, the Pennsylvania Superior Court and the Pennsylvania Supreme Court. *See Evans v. Court of Common Pleas, Delaware County*, 959 F.2d 1227, 1230 (3d Cir. 1992). However, in light of a May 9, 2000 order of the Pennsylvania Supreme Court, it is no longer necessary for Pennsylvania inmates to seek allowance of appeal from the Pennsylvania Supreme Court in order to exhaust state remedies. *See Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004).

If a habeas petitioner has presented his claim to the state courts, but the state courts have declined to review the claim on its merits because the petitioner failed to comply with a state rule of procedure when presenting the claim, the claim is procedurally defaulted. *See Harris v. Reed*, 489

---

[6]Petitioner originally filed his habeas petition in the Middle District of Pennsylvania. The Clerk of Court of the Middle District of Pennsylvania docketed Petitioner's habeas petition on December 11, 2012. Petitioner is a *pro se* inmate, so his habeas petition should be deemed filed on the date he gave it to prison officials for mailing. *See Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998). Since Petitioner executed the petition on December 5, 2012, this court will assume that he delivered it to prison officials for mailing on that date.

U.S. 255, 262-63 (1989). When a state court has declined to review a claim based on procedural default and the claim is not later addressed on the merits by a higher court, the habeas court must presume that the higher state court's decision rests on the procedural default identified by the lower state court. *See Ylst v.Nunnemaker*, 501 U.S. 797, 803 (1991). Finally, when a habeas petitioner has failed to exhaust a claim and it is clear that the state courts would not consider the claim because of a state procedural rule, the claim is procedurally defaulted.[7] *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Procedurally defaulted claims cannot be reviewed unless "the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. In order to demonstrate cause, the petitioner must show that "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the state's procedural rule." *Id.* at 753 (citation omitted). Examples of suitable cause include: (1) a showing that the factual or legal basis for a claim was not reasonably available; (2) a showing that some interference by state officials made compliance with the state procedural rule impracticable; (3) attorney error that constitutes ineffective assistance of counsel. *Id.* at 753-54. Recently, the Supreme Court held that a petitioner can demonstrate cause to excuse his procedural default of an ineffective assistance of trial counsel claim if: (1) his state requires that claims of trial counsel ineffectiveness be deferred to state collateral proceedings, and (2) he and shows that post-conviction counsel was ineffective at the initial post-conviction proceedings for failing to raise the defaulted trial counsel ineffectiveness claim. *Martinez v. Ryan*, 132 S.Ct. 1309, 1315 (2012).

---

[7] A common reason the state courts would decline to review a claim that has not been presented previously is the expiration of the statute of limitations for state collateral review. *See Keller v. Larkins*, 251 F.3d 408, 415 (3d Cir. 2001).

The fundamental miscarriage of justice exception is limited to cases of "actual innocence." *Schlup v. Delo*, 513 U.S. 298, 321-22 (1995). In order to demonstrate "actual innocence," the petitioner must present new, reliable evidence of his innocence that was not presented at trial. *Id.* at 316-17, 324. The court must consider the new evidence of innocence, along with the entire record, even that which was excluded or unavailable at trial. *Id.* at 327-28. Thereafter, the petitioner's defaulted claims can be reviewed only if the court is satisfied "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt," in light of the new facts. *Id.* at 327.

**2. Procedurally Defaulted Claims**

*a. Claim One – Ineffective Assistance of Counsel*

Petitioner asserts that trial counsel was ineffective for failing to request an instruction on the voluntariness of his statement. Pet. at 9. The Commonwealth contends that Petitioner's claim is unexhausted and procedurally defaulted. *See* Resp. at 7, 9-11.

Under federal exhaustion requirements, before presenting a habeas claim in this court, a petitioner must first present the same factual predicate and legal theory in state courts. *Evans*, 959 F.2d at 1230. Although Petitioner previously raised several ineffective assistance of counsel claims to the PCRA Court and the Pennsylvania Superior Court, he has not previously asserted that trial counsel was ineffective for failing to request a jury instruction concerning the voluntariness of his statement. *See supra* nn.2, 4 & 6. None of the claims Petitioner raised in the state courts are substantially equivalent to this particular federal ineffective assistance of counsel claim. Furthermore, Petitioner's failure to properly present this claim to the PCRA Court and the Pennsylvania Superior Court for review renders the claim unexhausted. *See Lambert,* 387 F.3d at 233-34.

Therefore, Petitioner cannot file a timely, new PCRA petition to exhaust this claim because the statute of limitations expired on June 1, 2009.[8]  Thus, this unexhausted claim is procedurally defaulted.  *See Keller,* 251 F.3d at 415.  Petitioner has not presented any cause and prejudice to excuse the default, nor has he presented any new, reliable evidence of actual innocence.  Hence, this court must dismiss claim one on procedural grounds.  *See Coleman*, 501 U.S. at 750; *Schlup*, 513 U.S. at 316-17, 324.

### b. Claim Two – Brady/Giglio Violation

Petitioner asserts in claim two that defendant Smith's failure to disclose honestly details of his plea agreement when he was cross-examined about any promises made to him in exchange for his testimony constitutes a *Brady/Giglio* violation.[9]  The Commonwealth contends that Petitioner's claim two is unexhausted and procedurally defaulted.  *See* Resp. at 7, 9-11.

In his PCRA appeal, Petitioner raised a claim regarding Smith's inconsistent statements.  *See supra* n.6.  However, Petitioner characterized that claim as an ineffective assistance of counsel claim, not as a *Brady/Giglio* violation.  A petitioner must present the same factual predicate and legal theory in the state court proceedings in order to properly exhaust that claim for habeas review on the merits.  *See Evans*, 959 F.2d at 1231.  Here, the Petitioner relies on a legal theory and constitutional provision that he has not previously presented to state courts for review; hence, claim two is unexhausted.  *See Lambert,* 387 F.3d at 233-34.  Petitioner cannot file a valid, new PCRA petition to exhaust this claim, because the statute of limitations expired on June 1, 2009.  *See supra*

---

[8] Since Petitioner did not seek *allocatur*, his conviction became final on direct appeal on or about May 31, 2008, thirty days after the Pennsylvania Superior Court affirmed his sentence.  *See* Pa.R.App.P. 1113(a).  Petitioner then had one year from the date his conviction became final to file a PCRA petition.  *See* 42 Pa. Cons. Stat. Ann. § 9545(b)(1), (b)(3).  This would have been Sunday, May 31, 2009.  Petitioner's deadline to file a timely PCRA petition is extended to Monday, June 1, 2009.  *See* Pa.R.Civ.P. 106(b).

[9] *Brady v. Marlyand*, 373 U.S. 83 (1963), applies when the prosecution suppresses favorable and material evidence that relates to guilt or punishment.  *Giglio* is a subset of *Brady* that addresses situations where certain evidence about a witness's credibility or motivation to testify exists, and "the reliability of a given witness may well be determinative of guilt or innocence."  *Giglio v. United States*, 405 U.S. 150, 154 (1972).

n.8.  Thus, Petitioner's unexhausted claim two is also procedurally defaulted.  *See Keller,* 251 F.3d at 415.

Petitioner has not presented any cause and prejudice to excuse the default, nor has he presented any new, reliable evidence of actual innocence.  Hence, this court must dismiss claim two on procedural grounds.  *See Coleman*, 501 U.S. at 750; *Schlup*, 513 U.S. at 316-17, 324.

### III. CONCLUSION

Petitioner's claims are procedurally defaulted.  Reasonable jurists would not debate the appropriateness of the court's procedural disposition of his claims, therefore, a certificate of appealability should not issue.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Accordingly, I make the following:

### RECOMMENDATION

AND NOW, this 19th day of November, 2014, for reasons detailed in the preceding report, it is hereby RECOMMENDED that Petitioner's procedurally defaulted claims be DISMISSED, without an evidentiary hearing.  Petitioner has neither demonstrated that any reasonable jurist could find this court's procedural ruling debatable, nor shown denial of any federal constitutional right.  Hence, there is no probable cause to issue a certificate of appealability.

Petitioner may file objections to this Report and Recommendation within fourteen (14) days of being served a copy of it.  *See* Local R.Civ.P.72.1(IV).  Failure to file objections may constitute a waiver of any appellate rights.

It be so **ORDERED**.

*/s/ Carol Sandra Moore Wells*
CAROL SANDRA MOORE WELLS
CHIEF UNITED STATES MAGISTRATE JUDGE